# 10-1372-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

———— ◆ ◆ ————

BARCLAYS CAPITAL, INC., MERRILL LYNCH, PIERCE, FENNER
& SMITH INCORPORATED, and MORGAN STANLEY & CO., INCORPORATED,

*Plaintiffs-Appellees,*

—against—

THEFLYONTHEWALL.COM, INC.,

*Defendant-Appellant.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (FOLEY SQUARE)

---

## BRIEF *AMICUS CURIAE* OF DOW JONES & COMPANY, INC. IN SUPPORT OF NEITHER PARTY

---

ROBERT P. LOBUE
PATTERSON BELKNAP WEBB
  & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Amicus Curiae
  Dow Jones & Company, Inc.*

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

News Corporation, a publicly held company, is the indirect parent corporation of Dow Jones & Company, Inc. ("Dow Jones") (a private, non-governmental party), and Ruby Newco LLC, a subsidiary of News Corporation and a non-publicly held company, is the direct parent of Dow Jones.  No publicly held company owns 10% or more Dow Jones stock.

# <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................1

STATEMENT OF INTEREST ............................................................................3

ARGUMENT ......................................................................................................5

    I.     In Order To Protect The First Amendment Interests At Stake, The "Hot News" Tort Should Be Limited To Barring Conduct That Constitutes Both "Free-Riding" And Systematic Misappropriation ...................................................5

    II.    In Order To Protect The Proprietary Interests At Stake, The Remedy In A "Hot News" Case Should Not Be Conditioned On Suing Every Arguable Wrongdoer .......................................................................11

CERTIFICATE OF COMPLIANCE .............................................................15

# TABLE OF AUTHORITIES

## CASES

*Barclays Capital Inc. v. Theflyonthewall.com*,
__ F. Supp. 2d ___, No. 06 Civ. 4908, 2010 WL 1005160
(S.D.N.Y. March 18, 2010) ........................................................2, 7, 9, 11

*Barclays Capital Inc. v. Theflyonthewall.com*,
No. 06 Civ. 4908, slip op., 2010 WL 1005160 (S.D.N.Y. May 7,
2010) ........................................................................................................7

*Capitol Records, Inc. v. Naxos of America, Inc.*,
372 F.3d 471 (2d Cir. 2004) ....................................................................13

*Cardtoons, L.C. v. Major League Baseball Players Association*,
95 F.3d 959 (10th Cir. 1996) ....................................................................7

*Dow Jones & Company, Inc. v. Briefing.com, Inc.*,
No. 10 Civ. 3321 (VM) ............................................................................4

*Dow Jones & Company, Inc. v. International Securities Exchange*,
451 F.3d 295 (2d Cir. 2006) ....................................................................5

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .............................................................................3, 11

*International News Service v. Associated Press*,
248 U.S. 215 (1918) .................................................................................5

*Madsen v. Women's Health Center*,
512 U.S. 753 (1994) .................................................................................7

*Metropolitan Opera Association v. Wagner-Nichols Recorder Corp.*,
101 N.Y.S.2d 483 (Sup. Ct. 1950), *aff''d* 107 N.Y.S.2d 795 (1st
Dep't 1951)...............................................................................................12

*National Basketball Association v. Motorola, Inc.*,
105 F.3d 841 (2d Cir. 1997) ........................................................5, 6, 8, 12

ii

*Paramount Pictures Corp. v. Carol Publishing Group*,
    11 F. Supp. 2d 329 (S.D.N.Y. 1998) ......................................................13

*Parks v. LaFace Records*,
    329 F.3d 437 (6th Cir. 2003) ....................................................................7

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) .....................................................................6

*Salinger v. Colting*,
    __ F.3d __, 2010 WL 1729126 (2d Cir. Apr. 30, 2010) ..........................11

## RULES

Federal Rule of Appellate Procedure 29 .........................................................3

Local Rule of the Court of Appeals for the Second Circuit 29.1(b) … ..........1

## OTHER AUTHORITIES

Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV.
    1105, 1133 (1990) ...................................................................................11

Melville B. Nimmer, *Does Copyright Abridge the First Amendment
    Guarantees of Free Speech and Press?*, 17 U.C.L.A. L. REV. 1180
    (1970)..........................................................................................................6

# **INTRODUCTION**

Dow Jones & Company, Inc. ("Dow Jones") does not support either appellant Theflyonthewall.com, Inc. ("Fly") or appellees (the "Firms"), but submits this *amicus curiae* brief to suggest to the Court potential difficulties with the district court's application of the "hot news" misappropriation tort.[1]  Dow Jones submits that the "hot news" misappropriation tort, while generally well-founded, must be applied with care and surgical precision in both the finding of liability and the fashioning of a remedy to balance the sensitive First Amendment and proprietary interests at stake.  In at least two respects here, however, the district court's decision could lead to both over- and under-enforcement of the tort.

First, a party crosses the line between protected speech and unlawful misappropriation of property only when it both *free-rides* on the efforts of the original disseminator of the news and *systematically* re-publishes a competitor's "hot news" in such a way as to undermine the economic incentives of the originator to continue to collect and publish the news.  Slavish copying and pasting of news in competition with the originator on a continuous basis could certainly have this effect, especially if tolerance of one such copyist invites others to do

---

[1] Pursuant to Local Rule 29.1(b), Dow Jones states that:  this brief was not authored, either in whole or in part, by counsel to any party in this action; and no entity other than Dow Jones contributed money that was intended to fund preparing or submitting this brief.  All parties to the appeal have consented to the filing of this brief, and amicus therefore has not moved for leave to file this brief.

likewise.  On the facts here, the district court found that both free-riding and systematic appropriation had occurred, but imposed a permanent injunction that (1) is not explicitly limited to free-riding, and (2) could be read to bar more than systematic misappropriation for commercial purposes of the news at issue–the Firms' investment recommendations.  The injunction appears to bar the reporting of news even if the defendant engages in its own industrious efforts to collect the news (rather than free-riding on another's efforts).  It also appears to bar occasional or one-time reporting on a Firm's investment recommendation–no matter how newsworthy that recommendation is in and of itself–unless the report is made after the market opens, contains adequate "context" and "analysis," and is in reaction to a "significant market movement that has already occurred that same day."  *Barclays Capital Inc. v. Theflyonthewall.com*, ___ F. Supp. 2d ___, No. 06 Civ. 4908, 2010 WL 1005160, at *32 (S.D.N.Y. March 18, 2010) (hereafter, "*Fly*").  If injunctions containing these restraints were to become the norm in hot-news cases, they would interfere with legitimate journalistic activity and pose a serious conflict with the First Amendment.

In another respect, however, the district court's injunction imposed too heavy a burden on the proprietary interests at the heart of the "hot news" misappropriation tort.  The injunction is surprisingly conditioned on the Firms' enforcing their rights with respect to all other individuals or entities who engage in

2

activities arguably similar to Fly's, regardless of whether it makes sense from a business perspective for the Firms to do so.  This condition is unprecedented and cannot properly be imposed.  A plaintiff in a "hot news" case should be awarded a properly-tailored permanent injunction if it meets the requirements set forth in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), and should not be precluded from obtaining that remedy if it is unwilling or unable to sue all others who may be engaged in arguably similar activity.

## STATEMENT OF INTEREST

Dow Jones respectfully submits this *amicus curiae* brief, which is not in support of either party, pursuant to Federal Rule of Appellate Procedure 29. Dow Jones' publications include, among many others, *The Wall Street Journal*, *Barron's*, MarketWatch, and the Dow Jones Newswires.  Like other media entities, Dow Jones has had to address the seismic changes in the news business wrought by the Internet, which benefits the public by affording widespread and instantaneous delivery of information but also poses enormous challenges for the businesses that expend resources to create and collect that information.  Such efforts are uniquely vulnerable to free-riding by others who choose to reap where they have not sown.

As both a print and digital news publisher, therefore, Dow Jones has a direct interest in the development and proper delineation of the "hot news"

3

misappropriation tort.  For example, it recently filed an action in the Southern

District of New York that includes a "hot news" misappropriation claim (*Dow

Jones & Company, Inc. v. Briefing.com, Inc.*, No. 10 Civ. 3321(VM)), which may

be affected by the decision in this case.  In *Briefing.com*, Dow Jones alleges that

the defendant–an online financial news distributor like Fly–engaged in an

egregious pattern of "cut and paste" plagiarism in which both time-sensitive

headlines as well as substantial portions of the text of articles originated by Dow

Jones were republished on the Internet by a competitor without permission and

without expenditure of the considerable cost and effort incurred by Dow Jones to

uncover the news and write its reports in the first place.  In Dow Jones' view, the

Briefing.com fact pattern constitutes quintessential "hot news" misappropriation

(as well as copyright infringement in many instances).  Dow Jones takes no

position on whether the present case also so qualifies, but seeks to preserve both

the ability of news organizations that spend significant resources in collecting and

reporting news to protect their investment, and their ability to report on

newsworthy events without undue intrusion by the courts into the editorial process.

# ARGUMENT

## I.    IN ORDER TO PROTECT THE FIRST AMENDMENT INTERESTS AT STAKE, THE "HOT NEWS" TORT SHOULD BE LIMITED TO BARRING CONDUCT THAT CONSTITUTES BOTH "FREE-RIDING" AND SYSTEMATIC MISAPPROPRIATION

The "hot news" misappropriation tort "protect[s] property rights in time-sensitive information so that the information will be made available to the public by profit seeking entrepreneurs." *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 853 (2d Cir. 1997) ("*NBA*")*.*[2]  In the seminal "hot news" case, *International News Service v. Associated Press*, 248 U.S. 215 (1918) ("*INS*"), the conduct that gave rise to liability was "the bodily appropriation of a statement of fact or a news article, . . . without independent investigation or other expense," which was "pursued by defendant systematically with respect to" the plaintiff's news reports.  *Id.* at 243.  *INS* thus established two required elements of particular concern here:  (1) that the defendant republish the news "without independent investigation or other expense," and (2) that it be done "systematically."  These elements are key to the economic principles that lie at the heart of the tort.  If the

---

[2] *NBA* deals solely with the republication of "hot news" and does not address other types of conduct that may be actionable under the rubric of misappropriation.  For example, this Court has acknowledged that *NBA*, which is premised on principles of copyright preemption, does not limit liability for misuse of information that does not fall within the scope of copyright. *See Dow Jones & Co., Inc. v. Int'l Secs. Exch.*, 451 F.3d 295, 302 n.8 (2d Cir. 2006). The present case does not raise, and amicus does not comment in this brief on, any issue regarding the viability or proper scope of the misappropriation theory in areas other than the republication of hot news.

defendant is not engaged in conduct that avoids the expense of collecting the information (i.e., is not "free riding"), that conduct is unlikely to provide a competitive advantage that disincentivizes the original collection of the information. And, if the information is not republished in a regular and systematic way comparable to the coverage of the originator, such republication is unlikely to satisfy the demand for the original and, therefore, unlikely to cause competitive harm. On the other hand, where those twin elements are present, a severe threat may be posed to the economic incentives to collect and publish the information in the first place, to the detriment of the originator and, ultimately, the public.[3]

These considerations are relevant to both liability and the fashioning of a remedy. Any injunction issued to enforce the property right protected by the tort should be effective yet narrowly tailored to match the tort's purpose and scope. Moreover, although the First Amendment does not preclude protecting intellectual property rights,[4] First Amendment concerns "must . . . inform . . . consideration of the [protection's] scope" where, as here, enforcing the right "might intrude on First Amendment values." *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989)

---

[3]    Although *NBA* expressly found it unnecessary to address the First Amendment, 105 F.3d at 854 n.10, the interest in the free flow of information to the public undoubtedly bore on the Court's decision. Indeed, amicus believes that a properly construed and applied hot news cause of action would not create any inconsistency with the First Amendment. Properly calibrated, the tort serves to enhance the flow of information by preserving the economic incentive to generate and distribute it, entirely in keeping with the goals of the First Amendment.

[4] *See, e.g.,* Melville B. Nimmer, *Does Copyright Abridge the First Amendment Guarantees of Free Speech and Press?*, 17 U.C.L.A. L. REV. 1180 (1970).

(considering scope of Lanham Act protection against use of individual's name in movie title in light of First Amendment protection for film-maker's exercise of artistic expression in choosing title); *see also Parks v. LaFace Records,* 329 F.3d 437 (6th Cir. 2003) (relying on *Grimaldi* and holding that First Amendment might curtail remedy for use of historic person's name in song title); *Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 95 F.3d 959 (10th Cir. 1996) (balancing governmental interest in protecting intellectual property against speech restriction and holding that First Amendment interests prevailed under specific facts of that case).[5]

The district court may not have given sufficient consideration to the serious First Amendment concerns that arise when an individual or entity is barred from reporting news.[6]  While the district court concluded that Fly had engaged in free-riding on the efforts of the Firms to develop investment recommendations, *Fly*, 2010 WL 1005160, at *22, it is not clear from the court's findings whether Fly

---

[5]  Even if the injunction is viewed as a content-neutral time, place and manner restraint, it is subject to heightened First Amendment scrutiny. *See Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994) (differences between injunctions and generally applicable statutes require "more stringent application of general First Amendment principles" in the injunction context).

[6] Although the district court considered various public policy issues in determining the scope of the permanent injunction–including the "public interest in 'unrestrained access to information,'" *Fly*, 2010 WL 1005160, at *29–it did not expressly consider the First Amendment concerns presented by this case, apparently because, as explained in a subsequent opinion, Fly "expressly disclaimed" a First Amendment defense, *Barclays Capital Inc. v. Theflyonthewall.com,* No. 06 Civ. 4908, slip op. at 13, 2010 WL 1005160 (S.D.N.Y. May 7, 2010).  Because the First Amendment interests at stake here are of paramount public concern, they should nonetheless be weighed by this Court in considering whether the scope of the injunction is appropriate.

simply copied those recommendations from media authorized by the Firms or engaged in legitimate journalistic effort to uncover and verify the facts concerning the Firms' recommendations.  According to *NBA,* that distinction goes to the heart of free-riding.  In *NBA,* which dealt with the dissemination of basketball scores, this Court held that "[a]n indispensable element of an *INS* 'hot-news' claim is free riding by a defendant on a plaintiff's product, enabling the defendant to produce a directly competitive product for less money because it has lower costs."  105 F.3d at 854.  Where the defendant used its own efforts to collect and transmit the scores, it was not engaged in free-riding.  On the other hand, this Court also suggested in *NBA* that if the defendant merely copied the scores from an authorized distribution vehicle and sold them in competition with the authorized distributor, that "would constitute free-riding." *Id.*

Here, the district court's analysis and injunction do not clearly distinguish between republication of the investment recommendations in such a way as to avoid the costs of collecting those facts–for example, by slavishly copying them from a computer screen fed by an authorized distributor, or by using an automated web crawler–and dissemination that is the result of industrious collection of the facts from one or more sources.  Faithfulness to the lines drawn in *NBA* requires that this distinction be made.

The district court may have also strayed from the requirement of "systematic" misappropriation in fashioning relief. The court did conclude that the harm in this case was caused by Fly's "systematic" misappropriation of the Firms' investment recommendations. *Fly*, 2010 WL 1005160, at \*9. The court, however, did not limit the injunction to prohibit only such "systematic" misappropriation. Instead, it granted an injunction that bars any reporting on one of the Firm's recommendations within one half-hour after the market opens in New York, unless the reporting is *both* "occasion[al]" *and* meets the following requirements: (1) it does not occur before the "market opens in New York"; (2) it consists of "independent analytical reporting" (which is undefined but presumably prohibits a report that largely consists of just the news that a particular investment firm has made or changed an investment recommendation); and (3) the analytical report must be about "a significant market movement that has already occurred that same day." *Id*. at \*\*30, 32.

Although the district court was avowedly, and commendably, attempting to discern the line between the commercially injurious conduct covered by the "hot news" tort and bona fide news reporting, those provisos do not properly mark the boundary line and threaten to penalize and restrain protected speech. News reports that are either not the product of free-riding or not part of a systematic pattern of republication should not fall under the "hot news" rubric at

all.  Both elements are essential, regardless of when in the day the report is
published, regardless of the report's content, and without other artificial judicially-
imposed limitations (such as requiring that it follow a market movement).

　　　　　These distinctions are vitally important to a news publisher such as
Dow Jones.  Suppose, for example, that Dow Jones learns from reliable sources at
8 a.m. that a major investment bank (*e.g.*, Morgan Stanley) has downgraded a
major company (*e.g.*, Microsoft), and decides that the fact of the downgrade is
newsworthy–perhaps because of the prominence of the speaker, perhaps because of
the prominence of the subject, or perhaps because of other conditions in the stock
market at that time.  Dow Jones has engaged in neither free-riding nor systematic
appropriation.  It should be able to publish that information with impunity because
it is news, irrespective of whether the market has opened and without worrying
about whether a judge will later conclude that it has added sufficient "context" or
"analysis" to its reporting of the real news:  the bank's change in position.  Such a
report is not free-riding, is not systematically repeated, and should not undermine
the bank's incentive to engage in investment research.  We suspect that, if
presented with these facts, the district court would readily agree that it did not
intend its decision to support liability in such a case, but its injunction, read
literally, would capture such facts.  Limiting the remedy for "hot news"
misappropriation to the systematic misappropriation of a competitor's property

10

based on free-riding–without imposing any time or content restrictions on non-systematic reporting of the news or information at issue–strikes the correct balance between news publishers' proprietary and First Amendment interests.

## II. IN ORDER TO PROTECT THE PROPRIETARY INTERESTS AT STAKE, THE REMEDY IN A "HOT NEWS" CASE SHOULD NOT BE CONDITIONED ON SUING EVERY ARGUABLE WRONGDOER

The district court also misapplied the "hot news" misappropriation doctrine insofar as it conditioned its grant of a remedy on the Firms enforcing their property rights against other individuals or entities that arguably engage in activity similar to Fly's. *Fly*, 2010 WL 1005160, at *32. This Court has made clear that to obtain an injunction in an intellectual property case, the plaintiff must show that the four *eBay* factors–likelihood of success on the merits; irreparable injury in the absence of an injunction; the balance of hardships; and public interest–weigh in its favor. *Salinger v. Colting*, __ F.3d __, 2010 WL 1729126, at **7, 9 (2d Cir. Apr. 30, 2010) (citing *eBay*, 547 U.S. at 391). Under *Salinger* and *eBay*, courts should not assume that an injunction will be an appropriate remedy in an intellectual property case, *see id*. at *11 (citing *eBay*, 547 U.S. at 393)–a rule that is particularly important when First Amendment considerations are present.[7] At the

---

[7] The evolving understanding of the role of injunctions in intellectual property cases as espoused in *eBay* and *Salinger* was foreseen by Judge Leval in his Commentary, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105, 1133 (1990) ("The court should grant or deny the injunction *for reasons*, and not simply as a mechanical reflex to a finding of infringement. Plaintiffs should be required to demonstrate irreparable harm and inadequacy of compensation in damages.").

same time, when an injunction is appropriate under *eBay*, the court should grant a

properly-tailored injunction without imposing additional conditions as the district

court did here.

       The condition imposed by the district court is unworkable and without

legal foundation.  Dow Jones is not aware of, and the district court did not cite, any

legal authority among the many misappropriation cases decided since *INS* that

requires a plaintiff to enforce its rights against all infringers in order to maintain an

injunction against any one infringer.  To the contrary, in one of the earliest New

York State court decisions to embrace the *INS* misappropriation doctrine, the court

rejected the defendant's argument that it should not be held liable because it was

not the only one violating the plaintiff's rights.  *See Metro. Opera Ass'n v.*

*Wagner-Nichols Recorder Corp.*, 101 N.Y.S.2d 483, 500 (Sup. Ct. 1950) ("The cry

of the defendants that others similarly transgress does not confer immunity on

them for their forbidden activities . . . ."), *aff'd* 107 N.Y.S.2d 795 (1st Dep't 1951),

*limited on other grounds by NBA*, 105 F.3d at 851.

       The district court's approach here would create an unexplained and

unsupportable dichotomy between misappropriation and analogous intellectual

---

Judge Leval found it unnecessary to rely on First Amendment considerations in
reaching this conclusion, finding it implicit in copyright law "on its own terms."
*Id.* at 1135.  Although the relationship between the "hot news" misappropriation
tort and the First Amendment has not been the subject of extensive commentary,
amicus suggests that this tort should be enforced with the same sensitivity to the
public interest in the free flow of information as informs the enforcement of all
other forms of intellectual property protection.

property regimes, where a proprietor of rights does not forfeit those rights as against one infringer by failing to sue other infringers. *See, e.g.*, *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 484 (2d Cir. 2004) ("[F]ailure to pursue third-party infringers has regularly been rejected as a defense to copyright infringement or as an indication of abandonment."); *Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998) (holding, in a copyright case, that "[e]xtending the doctrine of estoppel so that a defendant may rely on a plaintiff's conduct toward another party [as a defense to its own infringement] is both unsupported by law and pernicious as a matter of policy").

There is good reason to permit a plaintiff to choose the manner and extent to which it enforces its property rights. Many legitimate factors may influence a rights holder's decision not to pursue a particular infringer or infringers, including the significant cost of litigation; perceived gradations in the strength of the case; the availability of witnesses or other evidence; or even a business relationship with the infringer in other areas. As "there is no legal duty to instigate legal proceedings," rights holders should be able to exercise their discretion as to whether certain infringers are worth pursuing, and should be "free to instigate legal action against whomever [they] wish[]." *Paramount Pictures Corp.*, 11 F. Supp. 2d at 337. By hinging the Firms' right to obtain relief against Fly on an amorphous requirement that the Firms undertake "reasonable" efforts to

13

pursue all other entities that engage in arguably similar behavior, the district court's order threatens to diminish the very incentives to innovation and the dissemination of news that the "hot news" misappropriation tort was intended to protect.

Dated:     New York, New York
           June 21, 2010

Respectfully submitted,

PATTERSON BELKNAP WEBB &
TYLER LLP

By:  /s/ Robert P. LoBue
      Robert P. LoBue
1133 Avenue of the Americas
New York, New York  10036
Phone:  (212) 336-2000

*Attorneys for Dow Jones & Company, Inc.*

Of Counsel:

Catherine Williams
Alicia Tallbe

Mark H. Jackson, Executive Vice President and General Counsel
Jason P. Conti, Vice President and Associate General Counsel
Dow Jones & Company, Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,447 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14 point Times New Roman font.

Dated:      New York, New York
            June 21, 2010

                                        /s/ Robert P. LoBue
                                            Robert P. LoBue

# CERTIFICATE OF SERVICE & CM/ECF FILING

## 10-1372-cv

I hereby certify that I caused the foregoing Brief *Amicus Curiae* of Dow Jones & Company, Inc. in Support of Neither Party to be served on counsel for Plaintiffs-Appellees and Defendant-Appellant via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with a Notice of Docket Activity pursuant to Local Appellate Rule 25.1, and one courtesy copy By Hand to:

Robert Bruce Rich, Esq.
Jonathan Bloom, Esq.
Lisa R. Eskow, Esq.
Benjamin Ely Marks, Esq.
Weil, Gotshal & Manges LLP
767 5th Avenue
New York, New York 10153
(212) 310-8000
*Counsel for Plaintiffs-Appellees*

Glenn F. Ostrager, Esq.
Joshua Broitman, Esq.
Roberto Gomez, Esq.
Ostrager Chong Flaherty & Broitman P.C.
570 Lexington Avenue, 17th Floor
New York, New York 10022-6894
(212) 681-0600
*Counsel for Defendant-Appellant*

I certify that an electronic copy was uploaded to the Court's electronic filing system. An original and five (5) hard copies of the foregoing Brief *Amicus Curiae* of Dow Jones & Company, Inc. in Support of Neither Party were sent to the Clerk's Office By Hand Delivery to:

Clerk of Court
United States Court of Appeals, Second Circuit
United States Courthouse
500 Pearl Street, 3rd floor
New York, New York 10007
(212) 857-8500

on this 21st day of June 2010.

/s/ Natasha Monell Arez
Natasha Monell Arez